## THE UN WO SANG COMPANY *vs.* T. ALO *et al.*

APPEAL IN EQUITY FROM THE DECREE OF THE CHANCELLOR.

### OCTOBER TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

The rule of law approved, that the grantor conveys by his deed as an appurtenance whatever he has the power to grant which is practically annexed to the granted premises at the time of the grant, and is necessary to their enjoyment in the condition of the estate at the time.

But where the claim is made that the lease of the rice plantation carried with it the water right which was afterwards demised by a separate lease, the above rule of law does not apply, it appearing that the two leases were one transaction, and it was the understanding of the parties that the lease of the water right should be separate.

### DECISION OF CHANCELLOR JUDD, APPEALED FROM.

There are special difficulties met with in arriving at the facts of a business transaction between Chinese. They exist in the case before me, since the lessors of the plaintiffs have different interests involved and the plaintiffs are several individuals forming a partnership or *hui*, and various ones of its membership have taken part in transactions in dispute.

The object of the bill is to enjoin the defendants from bringing any action for rent on the lease acknowledged on the 25th of November, 1882, whereby the Un Wo Sang Company

(plaintiffs) covenanted to pay $200 per annum to Alo (de-fendant) for the use of the water from the " Charman Kuleana," and to declare the defendant trustee of the said lease to the use of the plaintiffs, and to account for rentals previously paid under said lease. The defendant, together with Tong Chow, Tong Woa and Pac Kanah had, previous to this lease, executed a lease dated October 26, 1882, of the rice lands at Waipa, Hanalei, Kauai, to Kwai Hee and Gee Chun, who, together with Wong Uck, C. Ahong, C. Aka and C. Aho, now form the Un Wo Sang Company (plaintiffs) at the annual rental of $1350. The plaintiffs now claim that the demise of the premises, which are a rice plantation on which water for irrigating purposes is a con-stituent, carried with it to the plaintiffs the right to the water as an appurtenance of the demised premises; that the lease was made for purposes of cultivating rice, which depends on irriga-tion, and that the demised premises were irrigated by and from the water-course in controversy for some time before the lease was made; that the defendant Alo, being one of the plaintiffs' lessors, had, at the date of the lease, power to grant the water-course, he having taken a lease of it from Mr. Charman, the true date of which must be taken to be 1st November, 1881, and as Alo (defendant) did not reserve the water right in the general demise of the rice plantation, it passed in law to the plaintiffs as an actually used appurtenance of the demised estate.

The lease of the estate, which I shall call the first lease, was prepared and signed in Honolulu the same day the plaintiffs' articles of copartnership were executed. The second lease (of the water right) was prepared and executed in Kauai, and Gee Chun alone signed it on behalf of the Un Wo Sang Company.

Kwai Hee, of the plaintiffs, says he was present on this land at Kauai when Alo (defendant) pointed it out to him and Gee Chun, and that Alo and Apakan (both of them lessors) said that the ditch belonged to the land. Apakan says that the previous company (the Han Tai), of which he, Alo and Asee were members, had used this water from the Charman ditch for six years, and only at the end, when Charman heard they were

using it, that they paid for it $50 for the six years. Charman says when he heard the Chinamen were using his water he demanded $100 rent and got $80.

Alo (defendant) says he acquired the Charman kuleana while the Han Tai Company were in possession of the rice lands, and that the Han Tai Company paid him for the water-right as they had no (other) water; that he told Kwai Hee when looking over the land that it was his own water-right; and that Kwai Hee came to see him about the water-right for which he first asked $350, but at Asee's solicitation he agreed to let the Un Wo Sang Company have it for $200, and that $150 of it was to be deducted from the $1600, the original rent agreed upon; and that Gee Chun signed the lease on Kauai. "I said, the water is separate from the rice land. Kwai Hee was told this."

The contradiction between Kwai Hee and Alo being so complete upon the question whether in the negotiations the water was to be separately considered or not, it is much to be regretted that Gee Chun, who was the resident manager of the plantation and signed the second lease himself, was not produced as a witness. I believe he is absent in China. At any rate it is not disputed that he signed the lease and deliberately bound the company of which he was by the article of copartnership manager for two years, to pay $200 a year for the water. He could not have understood, as Alo certainly did not, that the first lease, which demised the rice land which the remaining members of the Han Tai Company owned, carried with it, as appurtenant, the water right which Alo alone had the right to by lease from Charman. If the second lease had not been taken, the claim of plaintiffs could well be made that Alo's joining in the conveyance (the first lease) passed the water-right as an appurtenance, it not being reserved in the lease—although I do not think it would strike one of this class that a lease of partnership property would carry with it the property of an individual member.

While not going to the extent of saying that the plaintiffs are estopped by the second lease, it seems to me to support Alo's

contention that the negotiations for the water-right were a part of the original transaction and were not fully settled until the manager Gee Chun and Alo had met again on the premises after the first lease was signed.

The law contended for by plaintiffs' counsel, that the "grantor conveys by his deed as an appurtenance whatever he has the power to grant, which is practically annexed to the granted premises at the time of the grant and is necessary to their enjoyment in the condition of the estate at the time" (*Philbrick vs. Ewing*, 97 Mass.), 133, is not controverted by defendants' counsel. I think the law is well settled as claimed by plaintiffs; but having found that the two leases were one transaction, and that it was the understanding and intention of the parties that Alo should give a separate lease for his water-right and receive separate rent therefor, the rule of law above approved does not apply. It may be that this was not brought home sharply to Kwai Hee, so that when he returned home from China and ascertained that his firm were paying Alo $200 a year for the water, he repudiated it. If Gee Chun, the managing partner, had understood it as did Kwai Hee, he should not have taken the second lease.

The result most satisfactory to my mind is to hold that Alo's version is the truth, and therefore the bill must be dismissed.

### DECISION OF THE FULL COURT BY PRESTON, J. DOLE, J., DISSENTING.

The matters in issue in this case have been before the Court on several occasions.

On the 3d April last, the Court held that the question not covered by previous decisions, and to be decided in the present case, was the allegation in the bill that " at the date of the said lease and for some time prior thereto, a certain water-course and water-right had been used and enjoyed by the said lessors as appurtenant and belonging to the premises demised under said lease, and always had been and now is of right belonging and appurtenant thereto."

On the argument on appeal it was suggested to the Court that the statement in the opinion of the Chancellor, on which the decree appealed from was founded, "it is much to be regretted that Gee Chun, who was the resident manager of the plantation, and signed the second lease himself, was not produced as a witness," was inaccurate, and that in fact he was examined on the hearing of the previous case before Mr. Justice Preston.

It was agreed that the evidence taken in two previous cases between the parties should be used before the Chancellor.

On referring to the records of such testimony, we find that Gee Chun was examined, but we are of opinion that such testimony is more in favor of the defendants than of the plaintiff. He says that he executed the lease for Alo on Kauai, and a week after notified Wong Ko, the Honolulu agents, who were also partners, to pay the rent. This was November, 1882. Quai Hee says that he went to China in January, 1883, and in the first case he testifies, he stayed on the plantation for a year after the first lease. At any rate, he admits that he was here until after the first rent to Alo was paid, and might have known of it. He says, however, that he did not know of it until his return from China in 1887.

After a careful consideration of the case and of the opinion of the Chancellor, we see no reason to differ from the conclusion he has arrived at, and therefore,

The appeal is dismissed with costs.

*F. M. Hatch* and *A. S. Hartwell*, for appellants.

*P. Neumann* and *Chas. L. Carter*, for respondents.

---

### DISSENTING OPINION OF DOLE, J.

Upon a plea to this bill in which the decree on the second bill was pleaded in bar to this action, the Court in Banco said, in overruling the plea, that the present bill contained the following allegation which was not made by the previous bill, to wit: " At the date of the said lease and for some time prior

thereto, a certain water-course and water-right has been used and enjoyed by the said lessors as appurtenant and belonging to the premises demised under said lease, and always has been and now is of right belonging and appurtenant thereto."

The effect of this decision is to place the case about where it stood under the first bill, which alleged, among other things, that the water-course and the water were, at the time of the execution of the lease, appurtenant to the leased premises.

The evidence greatly preponderates in favor of such water-course being appurtenant to the leased premises. The witness, Kaiwi, introduced by the plaintiffs, had lived at Waipa for forty years. He said, " in old times the land was konohiki, used for taro. It had water; it came from the Waipa stream, through the ditch that has been spoken of. There is no other ditch from olden time by which this land can be watered. The spring Kiwaa is small; there is water there in rainy weather; it would not be enough for this land." Also, "The ditch was enlarged by the sugar plantation in 1863 and 1864; after the sugar plantation abandoned the land, Apakeen planted rice on it, using water from the same ditch." Also, " Nuuanu's land, now held by Charman, is the land where the dispute is. When Nuuanu had the land the water ran through the ditch on the land." He further stated that Nuuanu was his brother-in-law. This evidence of Kaiwi is supported by Loika, another old resident of Waipa, Apakeen and Albert S. Wilcox.

The witnesses introduced by the defense against the plaintiffs' claim to this water as appurtenant to the leased premises, were Makahiki, Ku and Kenaulu. Makahiki lived at Waioli and Hanalei and says that there was no ditch there before the time of the plantation, but Ku, who has lived in Waipa twenty years or more, admits the existence of an old ditch before the time of the plantation, but says there was no water in it. Kenaulu also, who formerly lived at Waipa, says there was a trace of another ditch, but it was lost before it reached Nuuanu's land. He also says, that the taro land on the leased premises was formerly watered from the Kiwaa spring; and Ku says he thinks that

the old ditch watered this taro land, and then inconsistently says they were watered from another source, *i.e.*, the Kiwaa spring.

This testimony of the defendants' witnesses entirely fails, in my mind, to break down the plaintiffs' evidence supporting the allegations of the appurtenant water-course. The claim of the plaintiffs on this point is strengthened by the testimony of Apakeen, who cultivated rice upon the demised premises from the time the sugar plantation was given up till these plaintiffs took possession, a period of about six years, under a lease from Albert S. Wilcox. He says in substance, that they got water from the old ditch which is in dispute and which crossed the Alo or Charman land, that water ran through that ditch on to the premises in question during that whole period up to the time the present plaintiffs took possession, and that after he had been using this water for six years, Charman wanted fifty dollars for use of the water, which was paid. This witness speaks of himself as one of the lessors of the plaintiffs. Charman's testimony agrees with that of Apakeen at this point, except that he says he demanded one hundred dollars for the use of the water and received eighty. There is no evidence whatever that Charman had any right to charge anyone for the use of this water running through his land. When he purchased the land of Wilcox, in 1875, the ditch was there and the water was running through it to the premises now occupied by these plaintiffs, and which Wilcox, after his deed to Charman, leased to Apakeen, under which lease Apakeen used this water-course without claim or opposition from Charman for six years. Charman says, " I claim the water; I bought the water and ditch with the kuleana. I don't know whether the deed says anything about it;" and his deed was not produced. I am convinced that Charman's demand for pay for the use of the water which ran through, but did not have its source in his land, was pure bluff on his part, without a shadow of right, and that he accomplished his end merely through the ignorance of Apakeen as to his rights.

It may be argued at this point, that admitting the facts and the law to be as I have found them, the plaintiffs are bound by their lease from the defendants to pay rent for this water. But it seems to me that, having found the water and the ditch through which it runs to be appurtenant to the land leased to the plaintiffs, the lease, which also demises the appurtenances belonging to the land, binds these defendants who were parties thereto, and they should not be permitted to take advantage of the ignorance of the plaintiffs, even though they labored under the same ignorance themselves, to obtain additional rents for a valuable interest covered by the original lease.

Whatever may be the correct conclusion on this point, there is much in the evidence and the records of the case which supports the plaintiffs' contention that the separate lease for the water-right was not mentioned in the negotiations for the lease of the premises and that Gee Chung, the manager of their plantation, signed the lease of the water from Alo from dire necessity and without the knowledge of Kwai Hee, who appears to be the head of the company. The agreement, by which the plaintiffs entered into partnership for the cultivation of the demised premises, has the same date with the lease thereof, and contains an assignment of this lease, which was made to Kwai Hee and Gee Chung only, to the partnership. It also provides that "all other leases of land situated in said Ahupuaa of Waipa now held or that may be held by any one or more of the said copartners in his individual or their joint names, shall be partnership property;" but there is no allusion whatever in the letters of copartnership to the future lease of this water-right, or of any water-right, thus affording strong negative testimony that at the date of the first lease there had been no negotiation in regard to the water-right in question as a distinct property from the demised premises. It is true that Kwai Hee makes contradictory statements in regard to his presence at Waipa when the lease of the water-right was signed; but the fact that no witness on either side testifies to his being there, and his own final testimony that he was not there, raises a doubt in my

mind of his being present at Waipa after the first lease was signed and before he went to China in the following January. At the first trial, the defendant, Alo, who is deeply interested in the results of the suit, was the only witness who testified to an understanding at the time the first lease was negotiated, that the water-right was not included within its stipulation but was to be conveyed by a separate lease. At the second trial his evidence on this point was rather lamely supported by Tong Chow who, however, did not know that Kwai Hee was present when the water was talked about, and further positively says that nothing was said on the subject to Monsarrat, who drew the lease of the premises.

It seems to me, therefore, that the defendants' contention that the water-right was understood, at the time of making the first lease, to be a distinct matter to be subsequently provided for by a separate instrument, is not made out.

In accordance with the foregoing reasons I am obliged to dissent from the opinion of the Court, feeling that the plaintiffs have satisfactorily shown that they are entitled to relief.